Leon A. YORK, Petitioner,

v.

MERIT SYSTEMS PROTECTION
BOARD, Respondent.

No. 82–1564.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 3, 1983.
Decided July 19, 1983.

Joseph B. Scott, Washington, D.C., with whom Irving Kator, Washington, D.C., was on the brief, for petitioner.

R. Craig Lawrence, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and Michael J. Ryan, Asst. U.S. Attys., Sherry A. Cagnoli, Asst. Gen. Counsel and Mason D. Harrell, Jr., Atty., U.S. Postal Service, Washington, D.C., were on the brief, for respondent.

Before WRIGHT and BORK, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge BORK.

Dissenting opinion filed by Senior Circuit Judge MacKINNON.

BORK, Circuit Judge:

We review today a decision of the Merit Systems Protection Board in which the MSPB affirmed the Postal Service's dismissal of petitioner Leon York. That decision was taken pursuant to the Office of Personnel Management's petition for reconsideration of an earlier MSPB decision. Our review of the record shows that the MSPB did not make clear the statutory standard it used in determining the circumstances under which OPM petitions for reconsideration may be entertained, nor did it explicitly apply any standard to this case. We therefore vacate the MSPB's decision and remand for further proceedings.

I.

In May 1979 a Postal Investigator posing as a customer turned in a blank money order at the Merchants Station Post Office in Baltimore. The clerk who received the money order gave it to the clerk-in-charge, petitioner York. Approximately one month later petitioner, who was then working at Waverly Station in Baltimore, wrote a fictitious name in the "pay to" and "purchased by" blocks of the blank money order and cashed it for $30. Petitioner did not deposit the $30 in postal funds. This course of action was quite improper and thoroughly out of accord with Postal Service procedures for dealing with blank money orders.

After investigating this matter, the Postal Service notified Mr. York in January 1980 that it proposed to remove him from federal service. By a letter of decision dated February 11, 1980, petitioner was removed effective February 29, 1980. York appealed his removal to the MSPB and a hearing was held on April 22, 1980. The Presiding Official at that hearing, in an initial decision dated June 13, 1980, upheld the Postal Service's order dismissing petitioner, who appealed the initial decision to the full MSPB in timely fashion. In a final order dated May 28, 1981, the MSPB reopened the case in order to assess the propriety of dismissal as a penalty and reversed the order of dismissal. Instead, the Board ordered the Postal Service to suspend petitioner for 30 days. Board Member Wertheim filed a dissent from that order on June 23, 1981.

By an undated letter (received on July 23, 1981), the Office of Personnel Management petitioned the Board to reconsider its May 28 Opinion and Order; OPM's petition was filed pursuant to 5 U.S.C. § 7703(d) (1982). OPM challenged the Board's decision on three grounds, claiming: (1) that the Order erred in retroactively applying *Douglas v. Veterans Administration,* 5 M.S.P.B. 313 (1981); (2) that the Board should not have entertained petitioner's arguments for mitigation of penalty, since he had not raised them below, and (3) that the Board's decision to mitigate was substantively erroneous. On April 23, 1982, the Board issued an Opinion and Order in which it granted reconsideration on the third ground urged by OPM, rejecting the first two arguments. Upon reconsideration, the Board reversed its May 28, 1981 Order, thereby sustaining petitioner's removal from federal service. We review the Board's April 23, 1982 Order.

II.

Petitioner contends that the MSPB erred both in granting OPM's motion for reconsideration and in reversing the initial decision upon reconsideration. Two grounds are urged upon us which, says petitioner, show that the Board should have refused to grant rehearing: petitioner contends that OPM's motion for reconsideration was not timely and that this case does not meet the statutory requirements for reconsideration. We remand for further consideration of the second of these arguments and so do not reach the merits of the MSPB's second Opinion and Order.

A.

The Office of Personnel Management may obtain judicial review of final decisions of the Merit Systems Protection Board un-

der section 7703(d) of Title 5, which authorizes the Director of OPM to seek such review if he "determines, in his discretion, that the Board erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the Board's decision will have a substantial impact on a civil service law, rule, regulation, or policy directive." .The court of appeals may grant or deny the Director's petition in its discretion. 5 U.S.C. § 7703(d) (1982). Petitions for reconsideration are necessary due to section 7703(d)'s provision that "[i]f the Director did not intervene in a matter before the Board, the Director may not petition for review of a Board decision under this section unless the Director first petitions the Board for a reconsideration of its decision, and such petition is denied." Under the rules governing intervention:

> (d)(1) In any case in which—
>
> (A) the interpretation or application of any civil service law, rule, or regulation, under the jurisdiction of the Office of Personnel Management is at issue in any proceeding under this section; and
>
> (B) the Director of the Office of Personnel Management is of the opinion that an erroneous decision would have a substantial impact on any civil service law, rule, or regulation under the jurisdiction of the Office;
>
> the Director may as a matter of right intervene or otherwise participate in that proceeding before the Board. If the Director exercises his right to participate in a proceeding before the Board, he shall do so as early in the proceeding as practicable. Nothing in this title shall be construed to permit the Office to interfere with the independent decisionmaking of the Merit Systems Protection Board.

5 U.S.C. § 7701(d)(1) (1982).

We must first decide whether OPM's motion for reconsideration, received by the Board on July 23, 1981, was timely. Petitioner suggests that it was not, arguing that because OPM must petition for judicial review within 30 days, it also must move for reconsideration within 30 days. Even if that is correct, petitioner must also persuade us that either (1) the 30-day period begins on May 28, when the majority opinion issued, rather than on June 23, when the dissent was released, or (2) OPM's motion for reconsideration should be treated as filed September 9, when the memorandum in support of the motion was tendered to the Board, rather than on July 23, when the Board received a letter from the Director which noticed a motion for reconsideration.

We need not decide whether a 30-day time limit applies, because neither of petitioner's additional contentions is tenable. In *Devine v. White,* 697 F.2d 421, 429–30 (D.C.Cir.1983), we found it necessary to decide the similar question of whether the 30-day limit on petitions for judicial review contained in section 7703(b)(1) applies to OPM petitions for judicial review of an arbitrator's decision as authorized by section 7121(f). While we found that the 30-day rule is applicable, we also discovered that neither the statute itself nor its legislative history was of much help on the question. 697 F.2d at 430. Unfortunately, that is also the case here.[1] Fortunately, we need not decide this issue—which in any event would be better resolved by MSPB regulations than by judicial *ukase*—because even if a 30-day limit applies, we hold that OPM's petition was timely.

■■■ OPM notified the MSPB that it was moving for reconsideration on July 23; OPM's memorandum in support of that motion was received on September 9. Petitioner's suggestion that we treat the latter as the date of the motion is without merit; we could as well demand that an appellant file briefs in this court, rather than his notice of appeal, within the time required for appeal. We also hold that the time within which the Director may move for reconsideration—whatever it may be—begins to run only when the entire opinion of

---

1. There is the dictum of *Parton v. Merit Systems Protection Board,* 684 F.2d 530, 533 (8th Cir.1982) (section 7703(b) time limits do not apply to section 7703(d)). We found *Parton* unpersuasive in *White,* however, 697 F.2d at 429, and so do not rely on it here.

the MSPB, including any dissent, is available. As we discuss more fully below, the Director's decision whether to move for reconsideration is based on his judgment as to the case's character as precedent—its impact on civil service law. This court knows well that the significance of a decision in case law can be profoundly conditioned by a dissent. In this instance, the Director moved for reconsideration 30 days after the dissent was published. Accordingly, his motion was timely under even the most restrictive rule we might adopt.

### B.

■ Petitioner also maintains that the Board's first (May 28, 1981) Opinion and Order did not meet the statutory standard governing grants of reconsideration. In order to decide this case, we must know what that standard is, since section 7703(d) does not explicitly state the circumstances under which reconsideration is to be granted. We cannot decide this question on the record before us. The parties assume that the MSPB should grant or deny petitions for reconsideration by deciding whether the case has the "substantial impact" referred to in sections 7701(d) and 7703(d), and that such decisions of the Board are reviewable in this court in the normal fashion. The Board's Order granting reconsideration did not discuss the rules applied in deciding such petitions by OPM.

This question is sufficiently open that it must in the first instance receive the Board's expert consideration. Given the "substantial impact" standard provided to guide the Director's discretion under section 7703(d) and that section's silence as to reconsideration, one might reasonably reach the conclusion the parties seem to have come to. Yet, the absence of any specific provision for reconsideration petitions, combined with the Board's general authority to control its own procedures, 5 U.S.C. § 7701(j) (1982), might suggest that the Board could by rule assign these decisions to its own discretion. Section 7703(d) does indicate that the Board can deny a petition for rehearing, but tells us nothing more.

There is a third possibility. Section 7703(d) makes the petition for reconsideration a functional substitute for intervention by the Director under section 7701(d). We might therefore plausibly conclude that petitions for reconsideration should be granted in cases in which intervention would have been available. While we are aware of no MSPB rule specifying when intervention will be granted, section 7701(d) appears to allow the Director to intervene as a matter of right on the basis of his (presumably unreviewable) opinion as to substantial impact. The fact that neither OPM in its Motion for Reconsideration nor the Board in its Order of April 23 addressed the question of substantial impact may indicate that they subscribe to this view. If this is the proper interpretation of sections 7701(d) and 7703(d), the Board is always required to rule on a reconsideration petition and cannot independently decide that the case has no substantial impact. Under this theory, petitioner York's claim that reconsideration should not have been granted, which respondent has met on its merits, could not possibly prevail.

Given this uncertainty, we cannot decide for ourselves which rule should govern petitions for reconsideration; the Board is entitled to the opportunity to apply its expertise to this question, subject to appropriate judicial review. Once the MSPB has taken a position on this issue, we can judge the soundness of that position under the statute and, if appropriate, review the decision to grant reconsideration. If we can exercise such review and decide that the Board had authority to reconsider its prior decision, then, and only then, can we reach the merits of the Board's decision as to York's termination.

Not only are we unable to decide what standard (if any) governs grants of reconsideration, we are without a record that we could use to apply such a standard to this case. If, as the parties suppose, we must independently apply the substantial impact rule, we are unable to tell whether it has been met. The parties vigorously dispute whether the Board's May 1981 Opinion and

Order had such a substantial impact. Petitioner emphasizes the Opinion's fact-bound character and notes especially that the Opinion concludes that it would not be "reasonable to remove this particular employee for this particular offense." Record Appendix ("R.A.") at 78. Respondent seeks to underscore the importance of trustworthiness in Postal Service employees, and portrays the May decision, which reduced petitioner's penalty from dismissal to a suspension, as standing for the proposition that breaches of trust by those who handle the mails are relatively minor matters. Such a precedent, according to respondent, would be exceedingly dangerous.

We subscribe without difficulty to the position that trustworthiness in postal employees, who routinely handle valuables as well as confidential communications, is an absolute necessity. But the issue before the Board on the motion for reconsideration was (we assume for this discussion) not the truth of that proposition, but the precedential effect of the May 1981 Opinion. This issue—the question of substantial impact—was not addressed in the motion for reconsideration. The Director's memorandum in support of his motion argues that the decision to mitigate penalty was substantively incorrect under governing MSPB precedents [2] but does not make any explicit arguments concerning the Opinion's impact on the path of the law. Interpreted as containing an implicit argument about precedential effect, the memorandum is ambiguous. It discusses the centrality of petitioner's fiduciary responsibilities, R.A. at 111, and so might be read as arguing that the May 1981 Opinion gave dangerously short shrift to that consideration. On the other hand, the memorandum attacks the Opinion as illogical and inconsistent with the record. R.A. at 110. Such a focus on the internal, case-bound features of the Opinion does not indicate a concern with its status as a precedent. The Director's memorandum does not directly argue the substantial impact point, and cannot reasonably be read to do so indirectly.

The same is true of the Board's April 1982 Opinion, which granted reconsideration and reversed the May 1981 Order. That opinion is concerned with the disposition of petitioner's case. At no point does it refer to the substantial impact standard. In its discussion of fiduciary responsibility and breach of trust, the Opinion assesses those factors as they relate to petitioner, not as they figure in the overall scheme of civil service law precedent. R.A. at 124. Discussion of the May 1981 Opinion as dangerous case law is not to be found. While we would naturally defer to the Board's application of the substantial impact standard (if that is what it applies to cases like this) and to its judgment as to its own body of precedent, we can find in the April 1982 Opinion no express decision to which deference might be given. As noted above, the 1982 Opinion is consistent with the view that the Board must consider any reconsideration motion on its merits.

We remand this case to the Board, therefore, so that it may decide (1) whether a decision to grant or deny is wholly discretionary with the Board, (2) if not, under what circumstances OPM petitions for reconsideration should be granted, (3) if the decision to grant reconsideration was based on a judicially reviewable ruling as to substantial impact, whether the May 1981 Opinion and Order had such an impact and, finally, (4) if it did, whether the decision or opinion was substantively erroneous.

*Vacated and remanded.*

MacKINNON, Senior Circuit Judge, dissenting:

In my opinion the decision of the Merit Systems Protection Board dismissing Petitioner from his employment with the Postal Service should be affirmed. I do not believe that the Board should be required to formalize its judicial analysis to the fine degree that our opinion suggests. How-

---

**2.** As noted above, the Director made three arguments for reconsideration; two were rejected by the Board and are not raised here as grounds supporting reconsideration. Hence, we discuss only the argument the Board found meritorious.

ever, some statement of standards may be desirable. In my view we would be justified in concluding that on reconsideration the Board reviewed the considerations it had considered in the first instance and concluded that they were in error. I would have absolutely no hesitancy in concluding that the action of the Board dismissing appellant for what constitutes forgery and theft was necessary because of the substantial impact on the efficiency of the Postal Service. There is no more apparent willful crime than forgery. The degree of preparation that the crime requires and the change in the document when considered in connection with its proven prior condition, proves the crime and its willfulness. The Postal Service handles millions of dollars in property, money and securities, and it would be derelict in its duties if it did not discharge a forger and a thief when discovered.